# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| JEROME REED, | ) |
| Plaintiff, | ) |
| v. | ) Case No.  5:18-cv-01994-AKK-JEO |
| GLADYS M. HOGUE, | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The plaintiff filed a *pro se* complaint seeking monetary damages or injunctive relief pursuant to 42 U.S.C. § 1983 for violations of his civil rights.  (Doc. 1).  The plaintiff names the following defendant in the complaint: Corrections Officer Gladys M. Hogue.  (*Id.* at 3).  The plaintiff seeks monetary damages.  (*Id.* at 4).  In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

### I. Procedural History

On March 18, 2019, the undersigned entered an Order for Special Report directing the Clerk to forward copies of the complaint to the named defendants and directing the defendant to file a special report addressing the plaintiff's factual allegations.  (Doc. 11).  The undersigned advised the defendant that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, the

court would consider it as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (*Id.*).

On May 14, 2019, the defendant filed a special report, supplemented by affidavits and/or other evidence. (Doc. 13). On May 15, 2019, the undersigned notified the parties that the court would construe the special report as a motion for summary judgment and notified the plaintiff that he had twenty-one (21) days to respond to the motion for summary judgment by filing affidavits or other material. (Doc. 14). The undersigned also advised the plaintiff of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. (*Id.*). *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). That deadline has expired and the court has received no response from the plaintiff.

This matter is now before the court on the defendant's motion for summary judgment.

## II. Standard of Review

Because the court has construed the defendant's special report as a motion for summary judgment, Fed. R. Civ. P. 56 governs the resolution of the motion. Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable

inferences against the moving party. *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532.

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, because the plaintiff is *pro se*,

3

the court must construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). "*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

### III. Summary Judgment Facts

The plaintiff attests that on December 9, 2017, he "had some words" with the segregation "cart worker from the kitchen." (Doc. 1 at 4). Officer Hogue "jumped in" and told the plaintiff that A-Dorm "wouldn't be getting anything if it" not for the segregation worker. (*Id.*). The plaintiff said, "F—k him" and Officer Hogue replied, "F—k you." (*Id.*). The plaintiff then said, "F—k you" to Hogue and she sprayed a whole can of mace in his "cell yelling die b---h die [I] am a real killer and you ain't nothing but some boy p---y." (*Id.*). A statement penned by the plaintiff on the day of the incident mirrors his testimony and adds the following details:

> [Hogue] went crazy on me saying f--k me and we both had some words so she sprayed ma[c]e in my cell, closed the trap door and window, and was saying die bitch die that she gone fuck me that [I] am some boy p---y that she a real killer and that I don't know her. I mean that lady throwed she even threw snow balls in my cell. I fear for my life.

(Doc. 13-5 at 1).

Officer Hogue disputes the plaintiff's testimony and attests the plaintiff threatened her, called her a b---h, and threw an unknown substance on her "facial, neck and left shoulder areas" as she was conducting segregation feeding in A-Dorm

4

around 11:05 a.m. (Doc. 13-7 at 1). She responded by administering "a one-two seconds burst of sabre red into" the plaintiff cell. (*Id.*). Hogue used no other force and then advised her immediate supervisor of the incident via radio. (*Id.*). Hogue denies using any derogatory language toward the plaintiff. (*Id.*).

According to Lt. Wilson's Duty Officer Report, around 11:05 a.m., the plaintiff "engaged in a verbal altercation with Officer Hogue. [The plaintiff] called Officer Hogue a b---h. Hogue administered a one second burst of Sabre Red Chemical Agent in the facial area of inmate Reed. All force ceased." (Doc. 13-2 at 1). Hogue informed Lt. Wilson of the incident at approximately 11:08 a.m. and Sergeants Parker and Walker responded to the scene, handcuffed the plaintiff, and escorted him to the Health Care Unit. (*Id.*). Lt. Wilson's Incident Report sets forth a similar version of events but adds that Hogan stated the plaintiff "called her a bitch and threw an unknown liquid on her." (Doc. 13-1 at 1). An unsigned Duty Post Log dated December 9, 2017, states that the plaintiff threw an unknown liquid on Hogue during feeding. (Doc. 13-3 at 1).

At 11:36 a.m. Nurse Walter examined the plaintiff in the Health Care Unit. (Doc. 13-1 at 1; Doc. 13-4 at 1). The plaintiff stated, "I got sprayed." (Doc. 13-4 at 1). Nurse Walter noted no injuries or complaints of pain, and no signs or symptoms of distress or discomfort. (*Id.*). She released the plaintiff to corrections officers and they escorted him back to his cell. (Doc. 13-1 at 1; Doc. 13-4 at 1).

5

The plaintiff received a Behavior Citation for Insubordination because he called Officer Gladys Hogue a b---h. (Doc. 13-6 at 1). He lost canteen, phone, and visiting privileges for 30 days and received extra duty for 30 days. (*Id.*).

## IV. Analysis

**B.    Sovereign Immunity**

To the extent the plaintiff sues defendant Hogue in her official capacity his claim is due to be dismissed. A law "suit against the State [of Alabama] and its [agencies for monetary damages] is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit." *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (citing *Edelman v. Jordan*, 415 U.S. 651 (1974); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459 (1945); *Worcester County Trust Co. v. Riley*, 302 U.S. 292 (1937)). No such consent can "be given under Art. I, Sec. 14, of the Alabama Constitution, which provides that "the State of Alabama shall never be made a defendant in any court of law or equity." *Id.*; *see also*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984). Further, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is not different from a suit against the state itself." *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 71 (1989) (citation omitted).

Defendant Hogue is an employee of the Alabama Department of Corrections, which is an agency of the State of Alabama. Therefore, the Eleventh Amendment bars the plaintiff's official capacity claim against Hogue.

**C.   Qualified Immunity**

The defendant asserts the affirmative defense of qualified immunity in connection with plaintiff's claim of excessive force. (Doc. 13 at 7).[1]

> In this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force "maliciously and sadistically to cause harm" is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*. *See Johnson. v. Breeden*, 280 F.3d 1308, 1319 (11th Cir. 2002). There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation. *Id.* The only question, then, is whether the plaintiff has alleged facts sufficient to survive a motion to dismiss or motion for summary judgment. If he has done so, that is the end of the inquiry.

*Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002). Accordingly, because qualified immunity is not at issue, the remainder of this report is dedicated to determining whether the plaintiff has presented sufficient facts to survive the defendants' motion for summary judgment as to his excessive force claim.

**D.   Eighth Amendment Excessive Force**

---

[1] The defendant appears to argue that she is entitled to qualified immunity because the plaintiff "states in his complaint that the pepper spray was sprayed in his cell, not on him; thus no force was used." (Doc. 13 at 4). However, the court must construe the facts in a light most favorable to the plaintiff. The plaintiff declares Hogue sprayed pepper spray in his cell, and in his written statement he reported Hogue shut the tray door and window to the cell and told him to die while cursing him. (Doc. 13-5 at 1). He also stated, "I got sprayed" to the infirmary nurse. (Doc. 13-4 at 1).

7

The plaintiff's excessive force claim against defendant Alexander is governed by the Eighth Amendment's Cruel and Unusual Punishments Clause. The Eighth Amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> [W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is that set out in *Whitley*, whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

*Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). In extending *Whitley* to all cases involving allegations of the use of force by prison officials, the Supreme Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 321-22).

"The use of force must stop when the need for it to maintain or restore discipline no longer exists." *Skrtich*, 280 F.3d 1295, 1304 (11th Cir. 2002) (citing

8

*Whitley*, 475 at 320-21). Therefore, if a non-compliant inmate has been restrained by guards and no longer poses a threat, he "cannot be subjected to gratuitous or disproportionate force that has no object but to inflict pain." (*Id.*).

With these concerns in mind, the Supreme Court set out certain factors that should be considered when evaluating whether the force used was excessive. These factors include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate. *Id*. at 7; *see Hewett v. Jarrad*, 786 F.2d 1080, 1085 (11th Cir. 1986).

In applying the foregoing factors to the facts of a particular case, the Supreme Court has instructed:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort "'repugnant to the conscience of mankind.'"

*Hudson*, 503 U.S. at 9 (internal citations omitted).

Even though defendant Hogue disputes the version of events presented by the plaintiff, at this stage of the proceedings the court must construe the facts in the light most favorable to the plaintiff and draw all reasonable inferences from those facts in

9

his favor. *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 608 (11th Cir. 2014). Moreover, where a conflict exists between the parties' allegations or evidence, "the plaintiff's evidence is to be believed and all reasonable inferences must be drawn in his favor. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003).

Applying the *Whitley* factors to the above facts and inferences, the plaintiff posed no threat to defendant Hogue nor could Hogue have reasonably perceived one as the plaintiff locked inside his segregation cell. Hogue had no need to apply any force and angrily pepper sprayed the plaintiff solely because he said, 'F—k you.' The undersigned reports that factors one through four weigh in the plaintiff's favor. Indeed, his circumstances bear striking similarity to those in *Odom v. Jasper Cty.*, No. 5:14-CV-22 (CAR), 2016 WL 1254358 (M.D. Ga. Mar. 29, 2016), a case where the district court denied summary judgment to a defendant who pepper sprayed a convicted prisoner, who was secured in his cell, for raising his voice to call the defendant a f-----t. *Id.* at *10 n. 94 (citing *Vineyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002) (arrestee's verbal insults merely a nuisance and did not create a threat justifying the use of pepper spray as she was secured in handcuffs in the back of police car))).

As for the final factor, the undisputed evidence shows the plaintiff suffered little more than temporary unpleasant effects of the pepper spray. Nonetheless,

"[t]he 'core judicial inquiry'" is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7). A reasonable jury could find that Hogue used force against the plaintiff out of malice, not good-faith. Accordingly, defendant Hogue's motion for summary judgment is due to be denied.

### V. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** the motion for summary judgment be **DENIED**. The undersigned **FURTHER RECOMMENDS** that the excessive force claim against defendant Hogue be **REFERRED** to the undersigned for further proceedings.

### VI. Notice of Right to Object

Any party may file specific written objections to this report and recommendation. A party must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting. Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations,

present additional evidence, or repeat legal arguments. An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order. In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations. The district judge must conduct a hearing if required by law. Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence. Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record. The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may only appeal from a final judgment entered by a district judge.

**DATED** this 18th day of November, 2019.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge